UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS


KENNETH McELROY,
     Plaintiff,

     v.                                    CIVIL ACTION NO.
                                            09-12195-MBB
THE CITY OF LOWELL, OFFICER
DANIEL JAMES HOUSTON, OFFICER
R. STURDAVANT, OFFICER POL
and UNKNOWN LOWELL POLICE
OFFICER,
     Defendants.


            **MEMORANDUM AND ORDER RE:**
            **DEFENDANT CITY OF LOWELL'S**
                **MOTION TO DISMISS**
                **(DOCKET ENTRY # 8)**

                    **October 5, 2010**


**BOWLER, U.S.M.J.**

     Defendant City of Lowell ("the City") moves to dismiss Count II under Rule 12(b)(6), Fed. R. Civ. P 12(b)(6).  (Docket Entry # 8).  Plaintiff Kenneth McElroy ("plaintiff") opposes the motion.  (Docket Entry # 20).  After conducting a hearing, this court took the motion (Docket Entry # 8) under advisement.

     Plaintiff alleges that a number of officers of the Lowell Police Department unlawfully arrested him and used excessive force.  (Docket Entry # 1).  Pursuant to 42 U.S.C. § 1983 ("section 1983"), plaintiff brings an action for the violation of

his civil rights against the officers in their individual capacity and against the City.

PROCEDURAL HISTORY

Plaintiff filed a three count complaint on December 26, 2009.  Counts I and III are directed against the individual police officers pursuant to section 1983 and Massachusetts General Law chapter 12, section 11I, respectively.  Count II seeks relief from the City pursuant to section 1983; alleging that the City has, as demonstrated by the actions of the officers described infra, "a policy of deliberate indifference to the rights of its citizens," and, by a failing to train, supervise, and discipline the officers, has adopted a "custom and policy in which constitutional rights are violated by excessive force and unlawful seizures."  (Docket Entry # 1).

STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007).  "If the factual allegations in the

complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010).

In considering the merits of a motion to dismiss, the court is limited in its review to the "facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice can be taken." Nollet v. Justices of the Trial Court of Mass., 83 F.Supp.2d 204, 208 (D.Mass. 2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. See Nollet, at 208.

Although this court must accept as true all of the factual allegations contained in the complaint, it is not appropriate to consider legal conclusions. See Ashcroft v. Iqbal, _ U.S. _ , 129 S.Ct. 1937, 1949 (2009) ("[t]hreadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action"); accord Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). Accordingly, a complaint does not

state a claim for relief where the facts presented fail to justify anything more than an inference of the mere possibility of misconduct. Iqbal, 129 S.Ct. at 1950 (requiring well plead facts making the cause of action plausible as opposed to merely possible).

FACTUAL BACKGROUND

At about 10 a.m. on April 12, 2008, plaintiff and a friend, James Earle ("Earle"), were driving in the vicinity of 50 North Street in the City on their way to New Hampshire. (Docket Entry # 1). While en route, the doors of a car, which was parked on the side of the road, opened and caused plaintiff to nearly collide with the vehicle. Plaintiff saw the driver of the other car ("the driver") through his rearview mirror and, noticing that the driver appeared upset, pulled over and exited his car to see if he had struck the other vehicle. (Docket Entry # 1).

The driver then rushed toward plaintiff and punched him multiple times. At this point, Earle exited the vehicle and stopped the assault. Plaintiff then fled while the driver chased after him wielding a hammer and crowbar. (Docket Entry # 1).

Plaintiff proceeded to drive around the block and telephoned the police. He then circled back to the scene of the

4

altercation.  Upon arriving back at the scene, he saw that a police cruiser had already arrived and that Earle was being "pushed up" against a truck.  (Docket Entry # 1).  Plaintiff next tried to tell the police officers what had occurred, but was told to "shut the f*** up," before being placed under arrest.  (Docket Entry # 1).

During the course of his arrest, an officer grabbed plaintiff by the shoulders, pushed him against a fence and "squeezed" him by the neck.  (Docket Entry # 1).  After releasing the hold on plaintiff's neck, an officer began to kick plaintiff's calves, spreading his legs apart until he fell.  Once plaintiff was on the ground, an officer placed his knee on the back of plaintiff's neck.  (Docket Entry # 1).  Plaintiff suffered a herniated disk and a torn medial collateral ligament ("MCL") during the altercation.  (Docket Entry # 1).

## DISCUSSION

I.  Section 1983

   A.  Existence of Municipal Policy or Custom

It is well established that a municipality is not liable for the tortious actions of its employees simply by virtue of the

employment relationship.[1] See Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997) ("[w]e have consistently refused to hold municipalities liable under a theory of respondeat superior"); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 692 (1978) (noting "general rule" that "the [municipality] is not responsible for the unauthorized and unlawful acts of its officers"); Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990) (municipal liability cannot be premised on theory of respondeat superior). Instead, to establish municipal liability, "a plaintiff must show that a policy or custom of the city led to the constitutional deprivation alleged." Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989); accord Hathaway v. Stone, 687 F.Supp. 708, 710 (D.Mass. 1988).

This requires that "both the existence of a policy or custom and a causal link between that policy and the constitutional harm" must be proven in order to impute liability to a municipality. Santiago, 891 F.2d at 381; see City of Canton Ohio v. Harris, 489 U.S. 378, 389 (1989) (municipality must consciously choose a policy that causes constitutional injury); Polk County v. Dodson, 454 U.S. 312, 326 (1981) (municipal policy

---

[1] Therefore, to the extent that the complaint rests on a theory of respondeat superior, it must fail.

must be the "moving force behind the constitutional violation" in order for liability to attach). The municipal policy may either be (1) an official policy articulated or adopted by a decision-maker; or (2) an unofficial custom as evidenced by widespread action or inaction. See Fletcher v. Town of Clinton, 196 F.3d 41, 55 (1st Cir. 1999) (the plaintiff must show policy officially adopted and promulgated, or government custom); accord Monell, 436 U.S. at 690 & 691.

The complaint does not point to an official policy that caused plaintiff's injuries. Rather, it generally states that the City has a custom of "deliberate indifference to the rights of citizens" because it has an inadequate training and supervision policy and because it fails to discipline officers involved in instances of constitutional violations. (Docket Entry # 1). These statements, however, are merely conclusory and need not be credited as true for purposes of this motion. See Iqbal, 129 S.Ct. at 1949. Therefore, plaintiff's claim can only survive this motion if the existence of a municipal policy can be inferred from the facts surrounding the single incident of alleged officer misconduct described in the complaint.

While the existence of a municipal custom may be evidenced by the repetition of unlawful acts by officers, a single instance of police misconduct in the field, standing alone, is

insufficient to establish the endorsement of an informal policy or custom by the City.[2] See Maldonado v. Fontanes, 568 F.3d 263, 273-275 (1st Cir. 2009) (single act of repetition found insufficient to establish custom or policy); Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (to impose liability on municipality a practice "must be so well settled and widespread that . . . municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice"); accord Estate of Bennett v. Wainwright, 548 F.3d 155, 177 (1st Cir. 2008).  Therefore, the single incident proffered in the complaint, without more, is insufficient to survive this motion to dismiss.

Without citing authority, plaintiff argues in his reply brief that the presence of multiple officers on scene is a sufficient fact from which the existence of a municipal custom can be inferred and liability thereby imposed against the City. (Docket Entry # 20).  Plaintiff is correct that the presence of a large contingent of officers working in concert can provide evidence of municipal policy even when the conduct relates to a single incident.  See Kibbe v. City of Springfield, 777 F.2d 801, 805 (1st Cir. 1985) (a single incident, during which three

---

[2] To allow a single incident of officer misconduct to stand as proof of a municipal policy and thereby impute liability to the City would be to ipso facto impose liability under a theory of respondeat superior. Polk, 454 U.S. at 326.

different officers impermissibly discharged their firearms, and ten officers failed to inform medical personnel that suspect had been shot, sufficient to infer a municipal custom); see also Bordanaro, 871 F.2d at 1157 ("[t]he fact that all of these officers acted in concert is further evidence [of] pre-existing practice . . . [a]bsent such a norm, it is highly unlikely such unanimity of action could occur"); Webster v. City of Houston, 689 F.2d 1220, (5th Cir. 1983) (conspiracy of 20 police officers to cover up shooting sufficient evidence of municipal policy to justify jury verdict).

The degree of the involvement of the multiple officers in the instant case, however, is easily distinguishable from the "concert of action" present in Kibbe,[3] Bordanaro[4] and Webster.[5]

---

[3] In Kibbe, ten police officers engaged in a vehicle pursuit of a fleeing suspect during which the suspect was shot by an officer. The suspect was then handcuffed and turned over to medical personnel. None of the officers on scene told the attending medical professionals that shots had been fired or that the suspect had been shot. The suspect was never treated for a gun shot wound and later died from a bullet that had entered his brain. Kibbe, 777 F.2d at 802-803. The court reasoned that a jury could have properly inferred, by virtue of so many officers ignoring the serious medical needs of the suspect, or instead, from so many officers resorting to deadly force when it was reasonable to conclude it was not appropriate, that a municipal custom of inadequate training existed and caused the violation of the plaintiff's rights. Kibbe, 777 F.2d at 807-808.

[4] In Bordanaro, an off duty police officer was in a fight in a motel bar. After the fight ended, he called the police station and rallied all of the officers working the night shift to come to meet him at the motel. Once they arrived, the officers went to the room of the other person involved in the fight, kicked in the door and beat the three unarmed occupants with nightsticks,

See generally Kibbe, 777 F.2d at 802-803; and Bordanro, 871 F.2d at 1153-1154; and also Webster, 689 F.2d at 1222-1224.  In all three cases an inference of municipal liability was justified because the conduct of the offending officers was so outrageous and the participation of many was so pervasive, that no other conclusion could be drawn except that this type of behavior was customary.  See Bordanaro, 871 F.2d at 1156 ("joint actions of the entire night watch of the Everett Police Department [allows] reasonable inference . . . operating under a shared set of rules and customs").

In this case, however, plaintiff fails to provide facts showing sufficient involvement of more than one officer that would justify holding the City liable.  Plaintiff does state that there were multiple officers on scene and that they failed to intervene.  Plaintiff, however, fails to provide facts that would demonstrate that officers engaged in a concerted action with the aim of violating his civil rights that is in any way similar to the conduct at issue in Kibbe, Bordanaro or Webster.  The mere fact that other officers were in the vicinity, without facts

---

tire irons, nunchucks and a fire axe.  One of the victims died as a result of his injuries.  Bordanaro, 871 F.2d at 1153-1154.
[5]  In Webster, nearly 20 officers conspired to cover up the police shooting of an unarmed 17 year old boy by placing a gun next to the deceased's body, claiming that he drew on the officers first and that officers only opened fire in self defense.  Webster, 689 F.2d at 1222-1224.

showing active participation in the misconduct, is insufficient to state a plausible claim of municipal liability.

Plaintiff additionally argues that it is not the concerted action of multiple officers that justifies imputing liability to the City but rather the fact that so many officers failed to intervene while witnessing the alleged instance of excessive force and unlawful arrest.  Plaintiff thus suggests that the inaction of the officers in the current case is analogous to the concert of action by officers found in the other cases and, therefore, the existence of a custom should similarly be inferred and liability thereby imputed to the City.

Again, and unlike the instant case, the officers' conduct in Kibbe, Bordanaro and Webster was so egregious that even a layperson would have been aware that it violated the victims' civil and constitutional rights.  In this case, however, the arresting officer's conduct is not so obviously improper.  Even if later found to be unconstitutional, it is not such a flagrant violation that it would allow an inference of improper custom simply because witnessing officers did not intervene on plaintiff's behalf.

    B.   Causation Amounting to Deliberate Indifference

Even if plaintiff provided facts sufficient to overcome dismissal with regard to the existence of a policy, plaintiff

must still demonstrate the requisite causal connection between that policy and his injury. Where, as here, "the policy itself does not violate federal law," but is instead a custom that "gives rise to subsequent conduct of subordinate employees that violates plaintiff's rights," significantly more is needed to show sufficient causal connection between the municipal conduct and "the deprivation of federally-protected rights." Hilchey v. City of Haverhill, 537 F.Supp.2d 255, 263 (D.Mass. 2008); cf. Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 10 (1st Cir. 2005) (city policy that officers always armed and always on-duty, coupled with failure to train regarding on-duty/off-duty misidentifications, sufficiently connected to friendly shooting death of off-duty officer to establish municipal liability).

To prove causation, plaintiff must show that the City's conduct amounted to a "deliberate indifference" to the constitutional rights of those persons that police would encounter. City of Canton Ohio v. Harris, 489 U.S. 378, 389 (1989) (only where municipality's failure to train evidences a "deliberate indifference" can such a shortcoming be properly thought of as a city "policy" actionable under section 1983); Bordanaro v. McLeod, 871 F.2d 1151, 1158-1159 (1st Cir. 1989) ("municipal liability requires evidence of gross negligence

amounting to deliberate indifference to the constitutional rights of those with whom the police would come into contact"); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) ("that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy [the legal] requirement"). Essentially, what is needed to prove the causal element under the deliberate indifference standard is a showing that a municipality had: (1) knowledge of an obvious risk to the constitutional rights of persons police would come in contact with; and (2) that there was a conscious failure to act despite the obvious risk. See Canton, 487 U.S. at 390 (municipality must affirmatively choose policy grossly neglecting obvious risk). A pattern of constitutional violations coupled with a failure on the part of a municipality to properly respond (either with appropriate training and supervision, or through disciplinary action) could permit the inference of the requisite knowledge and corresponding inaction needed to satisfy the deliberate indifference element. See Canton, 489 U.S. at 397.[6]

---

[6]  As explained in Canton:

> Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion. In such cases, the need for training may not be obvious from the outset, but a pattern of constitutional violations could put the municipality on notice that its officers confront the particular situation on a regular basis, and that they often

Plaintiff, however, points to no pattern of constitutional violations or to any other fact that would allow for the inference that the City had the requisite knowledge of an obvious risk to the constitutional rights of its citizens.  Furthermore, even if knowledge of an obvious risk could be inferred, plaintiff fails to point to any fact (other than the bald assertion that the City failed to train, supervise, and discipline officers) evidencing that the City disregarded that risk and therefore caused his injury. "[C]onsiderably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."  Kibbe, 777 F.2d at 805 (quoting Tuttle, 471 U.S. at 823).  While plaintiff states the grounds by which a municipality may theoretically be held liable pursuant to section 1983, he fails to provide even a modicum of fact that would make it plausible that the City would be held liable in this case.

I.  Punitive Damages

The City also moves to dismiss any claim for punitive damages.  The City correctly argues that, as a matter of law,

---

react in a manner contrary to constitutional requirements. Canton, 489 U.S. at 397.

municipalities are immune from the imposition of punitive damages based on a claim arising out of section 1983.  See Newport v. Facts Concerts, Inc., 453 U.S. 247, 271 (1981) ("history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials").  Therefore, any claim seeking punitive damages against the City does not survive the motion to dismiss.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss Count II (Docket Entry # 8) is **ALLOWED**.  In the event discovery uncovers sufficient facts to establish municipal liability or plaintiff currently possesses such facts, plaintiff may seek leave to amend the complaint.

                                            /s/ Marriane B. Bowler
                                        **MARIANNE B. BOWLER**
                                        Untied States Magistrate Judge